IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS,
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSICA VALDEZ<br>*Plaintiff,*<br><br>v.<br><br>LAIRD PLASTICS, INC.<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>CIVIL ACTION NO.5:21-CV-1251 |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff **JESSICA VALDEZ**, and files this Plaintiff's Original Complaint and Jury Demand, complaining of violations of Title VII by **LAIRD PLASTICS, INC** and would respectfully show unto the Court as follows:

**I.**
**PARTIES**

1.  Plaintiff, **JESSICA VALDEZ**, is a natural person who resides in San Antonio, Texas.

2.  Defendant **LAIRD PLASTICS, INC.**, is a Florida corporation doing business in San Antonio, Texas, in the Western District of Texas, San Antonio Division. Defendant may be served by certified mail, return receipt to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620 Austin, TX 78701-3136. A request for waiver of summons will first be issued.

**II.**
**VENUE**

3.  This Court has jurisdiction over the claim because Plaintiff has asserted a claim arising under federal law, Title VII of the Civil Rights Act of 1964, as amended, codified under

Title 42 U.S.C. Section 2000e *et. Seq.*

4. This Court has jurisdiction to hear the merits of Plaintiff's claims due to the federal question raised pursuant to the federal statutes cited above.

5. Venue is proper in the Western District of Texas, San Antonio Division under 42 U.S.C. 2000-e(5)(3), because this is the district where the unlawful employment practices complained of were committed, and where the employment records relevant to that practice are maintained.

6. As of the time of filing, damages are within the jurisdictional limits of the court.

### III.
### JURY DEMAND

7. Plaintiff hereby tenders payment for and demands trial by jury

### IV.
### MISNOMER / MISIDENTIFICATION

8. In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### V.
### BACKGROUND FACTS

9. Plaintiff Jessica Valdez began working for Defendant Laird Plastics, Inc. on or about April 13, 2015 in an inside sales position.

10. During her employment Valdez saw that the General Manager David Couch gave preferential treatment to one of the inside sales agents, Shelby Flournoy.

11. In late 2019 a relative of Couch, Robert Ochoa began working for Defendant. Ochoa told Valdez and her co-workers that Couch was having an extramarital affair with Flournoy.

12. While Valdez had suspected that the preferential treatment Flournoy received was due to Couch and Flournoy having a relationship, this confirmed her suspicions. Valdez realized that she was being treated differently than her coworker because she was not having an affair with Couch.

13. Flournoy would be awarded major accounts to work but would not work them herself. Instead, Flournoy would direct Valdez and her co-workers to perform a large amount of the work on the accounts. Despite this, Flournoy would receive credit for the work done.

14. Flournoy was also given preferential treatment in that she was allowed to come and go from work as she pleased while Valdez and others were not.

15. Flournoy was allowed to schedule and attend personal appointments during working hours and to bill Lair Plastics for expenses, both business and personal. In contrast, Valdez and others were not allowed to schedule and attend personal appointments during working house and were not allowed to incur business expenses.

16. Flournoy informed Valdez that Flournoy was billing Laird for personal expenses including alcohol and personal purchases from Amazon.com.

17. Flournoy was also the only sales representative who was allowed to attend conventions without restrictions while other sales representatives including Valdez were limited or denied the ability to attend those same conventions.

18. Flournoy was also allowed to mistreat co-workers. She would yell, slam items on her desk and curse and both customers and co-workers.

19. Valdez was concerned about reporting Flournoy's behavior because the person to whom she was supposed to report was Couch.

20. Valdez was concerned about reporting the behavior to anyone above Couch because he had previously told her that "I will make your life miserable if you go above me" when she had suggested talking concerns to higher management.

21. Despite these concerns, Valdez and other sales representatives did inform both Couch and management about the hostile work environment created due to the favoritism and privileges Couch gave Flournoy due to their sexual relationship.

22. Couch was dismissive of the concerns and would tell those reporting them that "this is the first time I am hearing this" and "I will handle the situation." Instead, Couch did as Valdez feared and told Flournoy that Valdez and sales representatives Rudy Mandujano and Stephanie Montoya were bringing complaints against her.

23. When the Warehouse Manager confronted Couch about the favoritism shown to Flournoy he was demoted and threatened by Couch that "if you ever go above me to corporate, I am going to make your life miserable."

24. Couch also called Valdez and tried to get her to discuss corporate's investigation into his relationship with Flournoy. Valdez reported this call to Defendant's Corporate Manager Amy Venezia. Venezia told Valdez that this was not the first time they had been told about the situation.

25. Eventually, Defendant assigned Cinthia Snell to investigate the complaints. This concerned Valdez because she was aware that Snell had a close relationship with both Couch and Flournoy.

26. Snell did contact Valdez as part of the investigation; however she was dismissive of the claims raised by Valdez. She also told Valdez that she and Rudy Ochoa had started the whole situation because of jealousy. She even told Valdez that this was due to the fact that they were Hispanic and "we know how jealous Hispanics are."

27. Following the investigation Ochoa quit working for Defendant and Defendant's investigation ended. Snell contacted Valdez and told her "You got what you wanted! You asked for this! You wanted an investigation and I did it!

28. Valdez had reported the discriminatory treatment and Defendant took no action to correct it. Instead of addressing the wrongdoers Defendant blamed Valdez and other employees who reported the discriminatory and hostile environment.

29. At this point Valdez had no option other than to quit working for Defendant to get out of the hostile work environment. She resigned from working with Defendant on or about May 22, 2020.

30. Valdez filed her Charge of Discrimination with the Equal Employment Opportunity Commission on November 20, 2020 alleging discrimination based on race and sex as well as retaliation for brining complaints about sex harassment and sex discrimination.

31. Valdez's Right to Sue Letter was mailed to her on September 17, 2021. As such she is timely filing this suit on or before December 16, 2021.

## VI.
## DISCRIMINATION BASED ON SEX- SEXUAL HARSSMENT BASED ON HOSTILE WORK ENVIRONMENT- IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

32. Sexual harassment based on a hostile work environment occurs when:

   a. An employee belongs to a protected class;

b. The employee was subject to unwelcome sexual harassment;

c. The harassment was based on sex;

d. The harassment was sufficiently severe or pervasive so as to alter the condition of employment and create an abusive working environment; and,

e. The employer knew or should have known and failed to take prompt remedial action.

33. The facts will demonstrate that Plaintiff was subject to a sexually hostile work environment because she was not in a sexual relationship with her manager while another employee was. This altered the terms and conditions of her employment by granting preferential treatment to the employee in the sexual relationship while denying opportunities and income to Plaintiff. Plaintiff reported the harassment to Defendant who failed to take action to correct it.

34. In determining whether a hostile environment exists the totality of the circumstances is considered including, but not limited to, factors such as:

a. Frequency of conduct;

b. Severity;

c. Degree to which the conduct is physically threatening or humiliating; and,

d. The degree to which the conduct unreasonably interferes with the employee's work performance.

35. The facts will establish that Plaintiff was required to work on accounts assigned to Flournoy but was not given credit for that work, that Flournoy was allowed to mistreat and humiliate Plaintiff, and that her employment was threatened when she brought complaints about the behavior.

## VII.
## DISCRIMIANTION BASED ON SEX-QUID PRO QUO SEX DISCRIMIANTION

36. A quid pro quo discrimination claim is established when a Plaintiff shows:

   a. They suffered a tangible employment action; and,

   b. The tangible employment action resulted from their acceptance or rejection of their supervisor's sexual advances.

37. In this case Valdez suffered tangible employment actions in that she was denied preferential accounts, denied opportunities for advancement, denied opportunities for continuing education, denied the ability to utilize company funds, and was constructively discharged because she was not in a sexual relationship with her manager, while the employee who was received those benefits.

## VIII.
## RETALIATION FOR BRINGING COMPLAINTS OF SEX DISCRIMIANTION AND A SEXUALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

38. In order to bring a claim of retaliation, a plaintiff must establish that:

   a. They engaged in protected activity protected by Title VII.

   b. They suffered an adverse employment action; and,

   c. There is a causal link between the protected activity and the adverse employment action.

39. The evidence will establish that Valdez brought multiple complaints about the discriminatory and harassing treatment she was suffering due to her sex and the fact that she was not involved in a sexual relationship with her manager. She suffered adverse employment actions in that she was denied preferential accounts, denied opportunities for advancement, denied opportunities for continuing education, denied the ability to utilize company funds, and was constructively discharged by Defendant. There is a causal link between the activity that is established by Couch telling Valdez that there would be negative consequences for her job if she

complained, the escalation of poor treatment of Valdez when she brought complaints, and Defendant's refusal to correct the situation.

## IX.
## RACE DISCRIMIANTION IN VIOLATION OF TITLE VII

40. A claim for race discrimination under Title VII is established by showing:

   a. That plaintiff is a member of a protected class;

   b. That they were qualified for their position;

   c. That they suffered an adverse employment action; and,

   d. That they were replaced by someone outside the protected class, or that others outside of the protected group and similarly situated were treated more favorably.

41. Here the facts will establish that Valdez is Hispanic and was qualified for her position. She suffered adverse employment actions in that she was subjected to worse terms and conditions of employment and that she was constructively discharged while non-Hispanic employees with the same job title were treated more favorably.

## X.
## ADMINISTRATIVE FILINGS

42. Plaintiff timely filed her charged of discrimination with the Equal Employment Opportunity Commission and received her right to sue letter. Plaintiff exhausted administrative remedies. Plaintiff timely filed this suit within 90 days of her receipt of the Right to Sue Letter from the EEOC.

## XI.
## RESPONDEAT SUPERIOR

43. Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant company and were at all times acting in the

course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## XII.
## DAMAGES

44. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorneys' fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was constructively discharged and interest on the back pay in an amount sufficient to compensate Plaintiff as the Court deems equitable;

   c. All reasonable and necessary costs incurred in pursuit of this suit;

   d. Expert fees as the Court deems appropriate;

   e. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

   f. Pre and Post judgment interest as allowed by law and punitive damages;

   g. Mental anguish in the past;

   h. Mental anguish in the future; and

   i. Loss of benefits, promotional opportunities, and job status.

## XIII.
## ATTORNEY FEES

45. Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees authorized under Title VII in this case which would include at least the following:

   a. Preparation and trial of the claim, in an amount the jury deems reasonable;

b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable; and

c. An appeal to the Court of Appeals, in an amount the jury deems reasonable; and

d. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XIV.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein; that upon a final hearing hereof, a judgment be rendered for Plaintiff for damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, and both post and prejudgment interest as allowed by law, attorneys' fees and for such other and further relief to which Plaintiff may be justly entitled.

**Respectfully Submitted,**

BY: */s/ Alan Braun*
**ADAM PONCIO
STATE BAR NO. 16109800
salaw@msn.com
ALAN BRAUN
STATE BAR NO. 24054488
abraun@ponciolw.com**

**PONCIO LAW OFFICES
A Professional Corporation
5410 Fredericksburg Road, Suite 109
San Antonio, Texas 78229-3550
Telephone:(210) 212-7979
Facsimile:(210) 212-5880**